USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYED SAMIR HOUSSAIN, and all other individuals similarly situated,

Plaintiff,

- against -

KENNETH CHENAULT, JOHN KOSLOW, and PETER SISTI,

Defendants.

**ORDER**

15 Civ. 8184 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

This is a putative class action brought on behalf of current and former employees of American Express Company ("Amex" or the "Company") who were participants in and beneficiaries of Amex's Retirement Savings Plan (the "Plan") between September 17, 2014 and February 11, 2015 (the "Class Period"). The Amended Complaint asserts breach of fiduciary duty claims under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., against three Amex officers relating to alleged securities fraud at Amex. (Dkt. No. 36) Defendants have moved to dismiss the Amended Complaint for failure to state a claim. (Dkt. No. 38) For the reasons stated below, Defendants' motion will be granted.

## BACKGROUND

### I. AMEX, ITS OFFICERS, AND THE PLAN

Amex is a public company that offers charge and credit card products; payment and expense management products and services; consumer and business travel services; stored value products, such as traveler's checks and other prepaid products; and network services. (Am. Cmplt. (Dkt. No. 36) ¶¶ 2, 48) The primary source of Amex's revenue is fees charged to

merchants when card members use their credit cards for purchases. (Id. ¶ 51) Amex has four operating segments: U.S. Card Services, International Card Services, Global Commercial Services, and Global Network & Merchant Services. (Id. ¶ 50) Amex also has four geographic reporting segments: (1) the United States; (2) Europe, Middle East and Africa; (3) Japan, Asia/Pacific and Australia; and (4) Latin America, Canada and Caribbean. (Id.)

Defendant Kenneth Chenault is and was during the Class Period the Chief Executive Officer and Chairman of the Amex Board of Directors. (Id. ¶ 31)

According to the Amended Complaint,

> [a]t all times, defendant John Koslow held various positions with AMEX subsidiaries engaged in the operation of financing loans and receivables, including Assistant Treasurer of American Express Travel Related Services Corp.; Director, Vice President, Secretary and Director of American Express Receivables and Financial Corp. VIII, LLC; and Vice President, Treasurer and Director of American Express Receivables and Financing Corp. II.

(Id. ¶ 32)

According to the Amended Complaint,

> [a]t all times, defendant Peter Sisti held various positions with AMEX subsidiaries engaged in the operation of financing loans and receivables, including Director of American Express Credit Corp; President, and Director of American Express Receivables and Financial Corp. VIII, LLC; and Director of American Express Receivables and Financing Corp. IV, LLC.

(Id. ¶ 33) "At all times," Koslow and Sisti were members of the Plan's Retirement Savings Plan Investment Committee (the "Investment Committee"). (Id. ¶¶ 32-33)

## II. THE AMEX RETIREMENT SAVINGS PLAN

The Plan is a defined contribution benefit plan that is sponsored by AMEX for eligible employees and is subject to ERISA. (Id. ¶ 35) According to the Amended Complaint, the Plan is governed by the Fifteenth Amended and Restated Plan document adopted on December 19, 2014. (Id. ¶¶ 36, 46) The Plan provides a variety of investment options for

participants, including the Company Stock Fund, which offers the Company's common stock. (Id. ¶¶ 36-37)

Section 6.2(a) of the Plan document provides that:

> It is the intention of the Company that the Plan allow Participants to invest in the common stock of the Company. . . . unless the Investment Committee determines that inclusion of the Company Stock Fund as an Investment Fund would not be in keeping with the Investment Committee's fiduciary duties under ERISA . . . .

(Watson Decl. (Dkt. No. 45-1), Ex. A at 46; Am. Cmplt. (Dkt. No. 36) ¶ 37[1])

The Plan provides for the Investment Committee to manage the investment options available under the Plan (Am. Cmplt. (Dkt. No. 36) ¶ 38), and the Investment Committee is one of the "Named Fiduciaries" under the Plan. (Id. ¶ 38) Section 10.4 of the Plan document describes the duties and powers of the Investment Committee as follows:

> Without limiting the scope of such other duties, responsibilities and authority as may elsewhere in the Plan or Trust Agreement be specified as belonging to it, the Investment Committee shall have the power, the duty, and the complete and exclusive discretion to: oversee the Company Stock Fund in accordance with applicable law . . . .

(Watson Decl. (Dkt. No. 45-2), Ex. A at 11; Am. Cmplt. (Dkt. No. 36) ¶ 38)

Pursuant to Section 13.1(a) of the Plan, Amex may amend the Plan at any time as a settlor function. The Plan provides that, in doing so, Amex is not assuming or exercising any fiduciary responsibility:

> The Company, acting by way of its applicable governance process, reserves the right at any time or times to amend the Plan and Trust Fund to any extent and in any manner that it may deem advisable. Each such action shall constitute an act of the Company as settlor acting in such capacity, not an assumption or exercise of fiduciary responsibility.

(Watson Decl. (Dkt. No. 45-2), Ex. A at 17)

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

In approving the Fifteenth Amendment to the Plan on December 19, 2014, the Compensation and Benefits Committee of the Company's board of directors, "pursuant to its delegation powers, . . . authorized the Chief Executive Officer of the Company to amend broad-based benefit plans," including the Plan. (Watson Decl. (Dkt. No. 45-1), Ex. A at 2; see also Am. Cmplt. (Dkt. No. 36) ¶ 46)

## III. AMEX'S CO-BRAND AGREEMENTS WITH COSTCO AND THE ALLEGED BREACH OF FIDUCIARY DUTY

Within the U.S. Card Services segment, Amex issues credit cards under co-brand agreements with other companies. (Am. Cmplt. (Dkt. No. 36) ¶ 52) Amex had exclusive co-brand agreements with Costco, "an international chain of membership warehouses that carry generally higher quality brand name merchandise, generally packaged in larger quantities and generally priced at lower prices than are typically found at conventional wholesale or retail sources." (Id. ¶ 53) Amex had "separate co-branding agreements with Costco Canada and U.S. Costco." (Id. ¶ 55) Amex's co-brand "agreement with Costco Canada was set to expire on December 31, 2014; its agreement with U.S. Costco was set to expire on March 31, 2016. (Id. ¶ 55)

On September 17, 2014, Costco announced that it would not renew the Costco Canada Agreement, and would instead accept only MasterCard credit cards. (Id. ¶¶ 5, 56) At about this same time, Amex began negotiations with Costco regarding renewal of the Costco U.S. Agreement. (Id. ¶¶ 6, 57) According to Plaintiff, Amex "had decided to accelerate contract renewal discussions well in advance of the expiration date." (Id. ¶ 57)

Over the next five months, Amex and its officers made a number of public filings and statements about Amex's financial results. (See id. ¶¶ 58-59, 61, 64-66) In these public statements and filings, Amex did not disclose (1) that Amex had begun early negotiations to

renew the Costco U.S. Agreement; (2) the expected impact on Amex's financial condition if the agreement was not renewed; or (3) data showing the significance of the Costco U.S. Agreement to, inter alia, Amex's worldwide billings, loans, and "cards in force." (Id. ¶¶ 60-61, 64, 67) During a January 12, 2015 conference call with investors, Amex Chief Financial Officer Jeffrey Campbell declined to comment on Amex's negotiations with Costco concerning renewal of the Costco U.S. Agreement:

> . . . I don't think we've said anything about any ongoing discussions we're having with Costco, obviously with very important partners, we are always working every day to evolve the relationship, to make it better and frankly to make sure it's working for both parties. And you can presume we're doing that with Costco as we're doing it with all of our partners at any time. And if and when we have any news, as we did with Delta which we chose to renew early, we would certainly tell you.
>
> . . . [W]hen we have great partners where our interests are really aligned, and I'll go back to the recent renewals of Delta and Starwood, we think we can create great value together and for all parties involved.

(Id. ¶ 66) During the Class Period, Amex's common stock traded as high as $94 per share. (Id. ¶¶ 9, 63)

On February 12, 2015, Amex issued a press release announcing that the Costco U.S. Agreement would not be renewed. (Id. ¶ 69) During a conference call with investors later that day, Chenault stated that the Costco U.S. co-brand cards accounted for "'approximately 8% of . . . worldwide bill business[,] . . . 20% of worldwide loans[,] and about 10% of worldwide cards in force.'" (Id. ¶ 71) By the end of the next day, the price of Amex common stock had dropped to $77.53, reflecting a decline of nearly $8.00 per share from the share price on February 11, 2015. (Id. ¶ 73)

Plaintiff contends that Defendants breached their fiduciary duty to Plan participants and beneficiaries because they were aware

> that AMEX['s] stock price had become artificially inflated in value, and there had become an imprudent investment for employees' retirement savings, yet took no action whatsoever to protect Plan participants from the harm this artificial inflation would inevitably cause.

(Id. ¶ 1)

According to Plaintiff, Defendants were aware that Amex's stock was artificially inflated because they – in contrast to non-insiders – (1) knew how important the U.S. Costco Agreement was to Amex's "bottom line"; and (2) were aware that Amex's "co-branding agreement with Costco was at risk," was "tenuous," and "was in danger of ending." (Id. ¶¶ 8, 9, 17, 67) Plaintiff further claims that – in order to avoid breaching their fiduciary duty – Defendants were obligated to either (1) disclose these alleged facts to the public; or (2) "clos[e] the Company Stock Fund to new investments until such time as the fund was no longer imprudent (that is, until the Company stock price was no longer artificially inflated)." (Id. ¶¶ 21, 24, 47)

## DISCUSSION

## I. MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). These factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint[,]"Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning

Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

## II. PLAINTIFF'S ERISA CLAIMS

### A. Applicable Law

Under Section 409 of ERISA,

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." Pension Benefit Guar. Corp. ex

rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 730 (2d Cir. 2013) (citing 29 U.S.C. § 1109(a); Pegram v. Herdrich, 530 U.S. 211, 225-26 (2000)).

"'In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" Coulter v. Morgan Stanley & Co., 753 F.3d 361, 366 (2d Cir. 2014) (alterations in original) (quoting Pegram, 530 U.S. at 226). ERISA provides that a person is a fiduciary to a plan if the plan identifies them as such. See 29 U.S.C. § 1102(a).

Even if not named as a fiduciary, a person or entity may also be a fiduciary under ERISA if that person or entity acts "in the capacity of manager, administrator, or financial adviser to a 'plan,'" Pegram, 530 U.S. at 222, thereby becoming a "functional fiduciary." Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A), 768 F.3d 284, 291 (3d Cir. 2014). A "functional" fiduciary duty arises where a person

> exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, or . . . has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); see also Santomenno, 768 F.3d at 291.

**B. Whether Chenault Had a Fiduciary Duty**

Plaintiff claims that Chenault was a fiduciary of the Plan, "because he had discretionary authority and control regarding the management of the Plan and the Plan's assets" as a result of his power to amend the Plan. (Am. Cmplt. (Dkt. No. 36) ¶¶ 25, 46-47, 87) Defendants argue that Chenault's power to amend the Plan did not make him a Plan fiduciary, because his power to amend the Plan was derived from the Company's power to do so, pursuant

to its "non-fiduciary settlor function." (Def. Br. (Dkt. No. 44) at 16-17) Plaintiff responds that it is only when companies amend an ERISA plan that they act as non-fiduciary settlors, and that Amex did not specify that Chenault's amendment power would be as a settlor when it delegated the power to him. (Pltf. Opp. (Dkt. No. 42) at 15-16)

"In defining the scope of a fiduciary's duty under ERISA, courts have distinguished between fiduciary functions, which give rise to ERISA liability, and 'settlor' functions, which are akin to actions taken by the settlor of a trust and do not trigger ERISA liability." Coulter, 753 F.3d at 367 (citing Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996); Flanigan v. Gen. Elec. Co., 242 F.3d 78, 88 (2d Cir. 2001); Akers v. Palmer, 71 F.3d 226, 231 (6th Cir. 1995)).

"[A]mending an ERISA plan is a settlor function, and ERISA assigns no fiduciary duties to sponsors when they 'adopt, modify, or terminate' ERISA plans." In re Citigroup Erisa Litig. (Citigroup I), No. 07 CIV. 9790, 2009 WL 2762708, at *11 (S.D.N.Y. Aug. 31, 2009) (quoting Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443 (1999)), aff'd, In re Citigroup ERISA Litig. (Citigroup II), 662 F.3d 128 (2d Cir. 2011), abrogated on other grounds by Fifth Third Bancorp v. Dudenhoeffer, 134 S.Ct. 2459 (2014).

Here, Section 13.1(a) of the Plan provides that Amex, "acting by way of its applicable governance process, reserves the right at any time or times to amend the Plan," and that "such action shall constitute an act of the Company as settlor acting in such capacity, not an assumption or exercise of fiduciary responsibility." (Watson Decl. (Dkt. No. 45-2), Ex. A at 17) Amex – acting through its board of director's Compensation and Benefits Committee, and "pursuant to its delegation powers, . . . authorized [Chenault] to amend broad-based benefit plans," including the Plan. (Id. at 2; see also Am. Cmplt. (Dkt. No. 36) ¶ 46) Because

"amending an ERISA plan is a settlor function," Citigroup II, 2009 WL 2762708, at *11, and "'settlor' functions, . . . do not trigger ERISA liability," Coulter, 753 F.3d at 367, the delegation of amendment power to Chenault did not transform him into a Plan fiduciary.

While Plaintiff complains that, in making the delegation, the board committee did not state that the amendment power it was delegating was a settlor function, (see Pltf. Opp. (Dkt. No. 42) at 15-16), that fact has no legal consequence. As a matter of law under ERISA, and under the terms of the Plan itself, Amex's power to amend the Plan is a settlor function. That Amex chose, through its "applicable governance process" – its board of directors – to delegate the exercise of that power to Chenault, does not change the fact that amending an ERISA plan is a settlor function that does not involve the assumption or exercise of fiduciary responsibility. Because Chenault's power to amend the Plan is derivative of the Company's power to amend the Plan, the delegation of authority to him did not create a fiduciary duty where previously none existed.

That use of, or the failure to use, the power to amend an ERISA plan could "prove[] detrimental to a covered plan or its beneficiaries" does not change the analysis. Coulter, 573 F.3d at 368-69 ("'[T]he employer acts as a fiduciary when administering a plan but not when designing or making business decisions allowed for by a plan, even though in all three situations its determinations may impact on its employees.'" (quoting Noorily v. Thomas & Betts Corp., 188 F.3d 153, 158 (3d Cir. 1999)).

Because Chenault did not have a fiduciary duty to the Plan, the claim against him will be dismissed.

**C. Whether Koslow and Sisti Had Knowledge of the Negotiations Concerning the U.S. Costco Agreement**

It is undisputed that Koslow and Sisti – as a result of their positions on the Investment Committee – had a fiduciary obligation to Plan participants and beneficiaries. See Def. Br. (Dkt. No. 44) at 11.

The Amended Complaint's factual allegations concerning their knowledge of the financial significance of the U.S. Costco relationship to Amex are sparse. (See, e.g., Am. Cmplt. (Dkt. No. 36) ¶¶ 16-17 ("Defendants Koslow and Sisti were deeply involved in AMEX's operations, and were officers and board members of AMEX's subsidiaries engaged in loans and receivables financing, so they knew or should have known . . . how important the Costco relationship was to AMEX's financial health."); id. ¶ 80 (Koslow and Sisti were "officer[s] of AMEX and knew or had reason to know the truth about [the] U.S. Costco-branding agreement from their position with the Company"); id. ¶ 82 (Koslow and Sisti are "officer[s] and board member[s] for various AMEX's subsidiaries that were engaged in loans and receivables financing, and each was thus deeply involved in AMEX's operations. These subsidiaries relied on AMEX's loans and receivables as inventory for their financing. Sisti and Koslow knew or had to know exactly how much of the receivables and loans they financed came from U.S. Costco . . . .")) For purposes of ruling on Defendants' motion to dismiss, however, this Court will assume arguendo that the Amended Complaint adequately pleads their superior knowledge of the significance of the U.S. Costco relationship to Amex's financial health.

As to Plaintiff's claim that Koslow and Sisti knew that Amex's "co-branding agreement with Costco was at risk," was "tenuous," and "was in danger of ending," (see id. ¶¶ 8, 9, 17, 67), however, supporting factual allegations are nearly non-existent. In essence, Plaintiff argues that they must have known, because they "were deeply involved in AMEX's operations,

and were officers and board members of AMEX's subsidiaries engaged in loans and receivables financing." (Id. ¶ 16; see also id. ¶ 82) These allegations are not sufficient.

Defendants have not pled facts making it plausible to believe that the status of the negotiations with Costco was shared with Koslow and Sisti. Although the Amended Complaint lists various positions that Koslow and Sisti held in Amex subsidiaries involved in the financing of loans and receivables, (see id. ¶¶ 32-33), it does not provide (1) an overview of Amex's general corporate organization; (2) an explanation of the subsidiaries at which Koslow and Sisti worked and how they fit into the larger corporate organization; (3) an explanation of what Koslow and Sisti did for the entities for which they worked; (4) any facts concerning what involvement Koslow and Sisti might have had with the Costco U.S. Agreement, and the negotiations for the renewal of that agreement. Indeed, the Amended Complaint does not provide any information about who from Amex was involved in the negotiations regarding the renewal of the Costco U.S. Agreement.

Given the Amended Complaint's assertions that information regarding these negotiations was so "material and significant" that senior executives wanted to "disguise[]" and "mask" it (see id. ¶¶ 9, 12, 17, 76), it would not be reasonable to infer that information concerning the status of the negotiations would have been shared beyond a very small group of senior executives at Amex. In any event, the Amended Complaint does not plead facts sufficient for this Court to plausibly infer that Koslow or Sisti had knowledge of the status of the renewal negotiations.

Because Plaintiff's claim that Koslow and Sisti knew or should have known the status of renewal negotiations is not a reasonable inference based on the facts alleged, neither could have breached a fiduciary duty to take action based on that information.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to terminate the motion, (Dkt. Nos. 38, 41), and close the case.

Dated: New York, New York
September 28, 2017

SO ORDERED.

Paul G. Gardephe
United States District Judge